**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| **LAURA ANDRADE,** § | | |
| § | **Civil Action No. _____** | |
| **Plaintiff,** § | | |
| § | | |
| v. § | | |
| § | | |
| **JACOB WIEBE TEICHROEB, individually** § | | |
| **and d/b/a SEMINOLE METAL** § | **Jury Trial Demanded** | |
| § | | |
| **Defendant.** § | | |

## PLAINTIFF'S COMPLAINT

### I.   PRELIMINARY STATEMENT

1.   Plaintiff Laura Andrade (Ms. Andrade) brings this lawsuit against her former employer, Jacob Wiebe Teichroeb (Defendant), based on extremely abusive working conditions that encompassed both assaultive and harassing conduct as well as underpayment of wages.

2.   Ms. Andrade worked for Defendant for several years. During those years, Defendant regularly abused her employment both through abusive wage practices and regular sexual assault in the workplace.

3.   Defendant refused to pay Ms. Andrade overtime wages throughout her employment and misclassified her as an independent contractor despite the fact that she was clearly an employee. Defendant's misclassification of and payment of low wages to Ms. Andrade allowed him to isolate her and subject her to routine and unbearable series of sexual assaults. Defendant regularly grabbed Ms. Andrade's breasts, propositioned her for sex, and insisted on showing Ms. Andrade naked photos of other employees. Defendant's abusive conduct intensified,

culminating in Defendant rubbing his penis on Ms. Andrade. Defendant's conduct forced Ms. Andrade to quit shortly thereafter.

## II.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

5.     The federal claims in this action are authorized and instituted pursuant to 29 U.S.C. § 216(b).

6.     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's claims arising under state law because these claims form part of the same case or controversy as Plaintiff's federal claim.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## III.     PARTIES

8.     Laura Andrade is a natural person who resides in Gaines County, Texas.

9.     Defendant Jacob Wiebe Teichroeb is a natural person who resides in Gaines County, Texas and who is being sued in his personal capacity and doing business as Seminole Metal. Process may be served upon Defendant at his place of business, 411 US Highway 385 N Seminole, Texas 79360, or wherever he may be found.

## IV.     STATEMENT OF FACTS

**A.     Defendant's Illegal Pay Practices in the Workplace.**

10.     Seminole Metal is a scrap metal yard located in Seminole, Texas. Defendant is the sole proprietor of the business. Defendant hires numerous employees to run the yard and one or two to help with office work and customer relations.

11.     In or around May 2014, Defendant hired Ms. Andrade to work in his kitchen for employees for $8 an hour.

12. Around August 2014, Defendant moved Ms. Andrade to work in his office – handling accounts for his business Seminole Metal as well as his personal properties and two ranches that he owned outside of Seminole Metal. By moving her to the office, he isolated her even further from other employees and put her in closer contact with himself.

13. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14. At all times hereinafter mentioned, Defendant has been an enterprise, individually and collectively, within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

15. At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprises have had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

16. Plaintiff was an individual "employee" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207 and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

17. Seminole Metals buys used scrap metal and other items from customers in New Mexico and Texas. Seminole Metals resells some of this metal to individual customers from New Mexico and Texas and resells some of the metal to recyclers in Texas. Seminole Metals maintains a small fleet of trucks with several drivers. These drivers use the trucks to transport

metal to recyclers, transport workers to Defendant's ranching business in Texas, and transport materials purchased in New Mexico to Defendant's ranching business in Oklahoma.

18. Defendant had business operations and annual gross volume of sales made or business done that exceeded $500,000 per year in 2015, 2016, and 2017.

19. Defendant maintained control, oversight, and discretion over the employment practices with respect to Ms. Andrade. Defendant made all major decisions relating to how Seminole Metal was organized and run on a day to day basis. Defendant was also Ms. Andrade's primary supervisor, logged her start and end times each day, and approved her timesheets.

20. Defendant's control over Ms. Andrade intensified throughout her employment – leaving her vulnerable to increased sexual harassment and assault away from the eyes of other employees and in an environment that made her less likely to complain or report his behavior.

21. Ms. Andrade's performed her work in the normal course of Defendant's business and was integrated into it. Ms. Andrade checked Defendant's business accounts and made payments out of them, entered information into Defendant's accounting system, verified the weight of metal customers brought to sell to Defendant, paid customers and provided them with receipts, and verified the day's metal prices.

22. Defendant promised to pay Ms. Andrade $8 an hour for all hours worked.

23. Defendant required that Ms. Andrade regularly work in excess of 40 hours per workweek without being paid the overtime rate for all hours worked over 40 hours per week, in violation of the FLSA.

24. During every week that Ms. Andrade worked from June 2015 to the end of her employment in June 2017, she regularly worked – with few exceptions – 57 hours per week.

25. Nonetheless, Ms. Andrade was only paid $8 an hour for all hours worked – including

those hours worked in excess of 40 hours per week.

26. Defendant was aware that Ms. Andrade was required to work overtime to complete her job duties. Nonetheless, with the exception of approximately two pay periods, Defendant failed to pay Ms. Andrade one and a half times the regular rate of pay of $8 an hour for all hours worked over 40 hours per week for any pay period from June 2015 to the end of Ms. Andrade's employment.

27. Defendant's unlawful conduct was willful and/or in reckless disregard of the applicable wage and hour laws and was undertaken pursuant to Defendant's centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA.

28. As part of his regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Ms. Andrade.

**B.   Defendant's Illegal Sexual Assault in the Workplace.**

29. Defendant's failure to pay Andrade her proper wages and to misclassify her was part of a larger pattern to isolate her and keep her vulnerable to his pattern of sexual assaults in the workplace.

30. In August 2014, Ms. Andrade started working in the office, which brought her to day-to-day contact with Defendant.

31. From August 2014 to July 2016, Defendant behaved increasingly inappropriately toward Ms. Andrade. He isolated her to exert more control over her employment while deterring her from complaining about his behavior.

32. During this period of time, he regularly showed her photographs on his telephone of other naked women and asked her if she wanted to sleep with him. Ms. Andrade told him she did not

want to see these photographs and did not want to sleep with him, but he continued to proposition her.

33.     Around mid-2015, he began putting his hand down her shirt and touching her breasts as he walked by her desk.  Ms. Andrade again asked him to stop but he ignored her.

34.     Defendant's behavior worsened in 2016.  One day in the middle of July 2016, Ms. Andrade was standing over the kitchen table making lunch for workers.  Defendant reached around her from behind and pulled her in.  His penis was erect and he pushed it against her backside.  Ms. Andrade immediately elbowed him to get off and told him she did not want him touching her that way.

35.     After this incident, Defendant stopped touching Ms. Andrade for a few months.  However, he began showing her photographs of naked women again between November 2016 and February 2017 and told her that one day he would have sex with her.

36.     One day in March of 2017, Defendant showed Ms. Andrade photographs of a penis and asked if it excited her.  He then went to the bathroom and came out with his erect penis hanging out of his pants.  She told him she did not want to see his penis and he left.

37.     One day in May of 2017, Ms. Andrade was cleaning the office at a time that clients would not enter.  Defendant forced her against the desk, pulled his pants down, and ejaculated on her backside.  Ms. Andrade pushed him away and ran to the bathroom to clean herself up.

38.     Ms. Andrade was extremely upset but was scared to tell law enforcement of the incident because of Defendant's connections in their community and the shame she felt.  She didn't know whether to tell someone, call the police, or quit.

39.     However, within a few weeks, she made her decision.  Defendant again grabbed Ms. Andrade's breasts in the middle of June 2017.  Pushed to her limit, Ms. Andrade yelled at

Defendant, told him to leave her alone, and quit in the middle of the day because she could no longer tolerate the extreme abuse in the workplace.

40. Ms. Andrade is not the only woman to be inappropriately touched by Defendant. Other women have been inappropriately touched or propositioned by Defendant both in the workplace as well as elsewhere in the community over a period of several years.

41. Ms. Andrade eventually told the police about Defendant's assaults. Two Gaines County Sheriff's deputies arrested Defendant for assault and indecent exposure after he admitted to many of the allegations raised by Ms. Andrade.

## V.   PLAINTIFF'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### FAIR LABOR STANDARDS ACT

42. Plaintiff reincorporates and re-alleges all paragraphs above in this complaint as if fully set forth herein.

43. Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201-219, against Defendant.

44. At all times during Plaintiff's work for Defendant in 2015 through 2017, she was employed in commerce or in the production of goods for commerce, or was employed in an enterprise engaged in commerce or the production of goods for commerce, within the meaning of the FLSA.

45. From 2015 to 2017, Defendant employed Ms. Andrade within the meaning of 29 U.S.C. § 203(g).

46. From 2015 to 2017, Defendant was Ms. Andrade's "employer" within the meaning of FLSA, 29 U.S.C. § 203(d).

47. Defendant violated Ms. Andrade's rights under the FLSA by failing to pay her not less than one and one-half times the regular rate of pay for all hours worked over 40 hours per workweek.

48. Under the FLSA, Ms. Andrade is entitled to receive her unpaid overtime wages, an additional equal amount in liquidated damages, and attorney's fees and costs of court. Accordingly, Ms. Andrade seeks the full amount of damages available to her plus her reasonable attorney's fees and costs of court.

## SECOND CAUSE OF ACTION:
## ASSAULT AND OFFENSIVE CONTACT

49. Plaintiff reincorporates and re-alleges all paragraphs above in this complaint as if fully set forth herein.

50. Defendant repeatedly assaulted Ms. Andrade while she worked in his employ when he intentionally and recklessly: (1) grabbed her buttocks and breasts without her consent; (2) grabbed her from behind and pressed his penis against her backside; (3) grabbed her from behind and ejaculated on her; (4) pulled his penis out from his pants and asked her if she would touch it; (5) routinely propositioned her for sex – asking her to have sex with him; and (6) routinely showed her photos of other naked women and asked her for sex.

51. Defendant should have reasonably believed that Ms. Andrade would regard his contact as offensive or provocative.

52. Ms. Andrade was harmed by the wrongful actions of Defendant. As a result of these actions, Ms. Andrade has suffered the following damages: past and future pain and suffering; past and future mental anguish; emotional distress; and economic damages.

53. In addition to actual damages, Ms. Andrade seeks recovery of punitive damages against Defendant as a penalty or by way of punishment in an amount commensurate with the nature of the

wrong, the character of conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of parties concerned, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of Defendant. Defendant's conduct exemplifies exactly the outrageous, malicious, and morally culpable conduct that punitive damages are meant to deter. As set forth above, Ms. Andrade's damages resulted from Defendant's gross negligence and/or malice.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Andrade requests that this Court grant her the following relief:

a. Actual or monetary damages;

b. Unpaid minimum wages and unpaid overtime compensation, plus an equal amount in liquidated damages, and attorney's fees and costs of the court for Defendant's violations of the FLSA;

c. Compensatory damages;

d. Special and punitive damages to the fullest extent permitted by law;

e. Prejudgment and post-judgment interest as allowed by law;

f. Costs of the court; and

g. Such other relief as this Court deems just and proper.

Respectfully submitted,

By:
/s/ Laura Choi
Laura Choi
Texas Bar No. 24100854
lchoi@trla.org
Christopher Benoit*
Texas Bar No. 24068653
cbenoit@trla.org
LEAD COUNSEL
Texas RioGrande Legal Aid, Inc.
1331 Texas Ave.
El Paso, Texas 79901
Telephone: (915) 585-5100
Fax: (915) 544-3789

AND

Fernando M. Bustos
Texas Bar No. 24001819
fbustos@bustoslawfirm.com
LOCAL COUNSEL
Bustos Law Firm, P.C.
P.O. Box 1980
Lubbock, TX 79408-1980
Telephone: (806) 780-3976
Fax: (806) 780-3800

ATTORNEYS FOR PLAINTIFF

*Motion for Pro Hac Vice Admission Forthcoming*